IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

OLIN CORPORATION, )
        Plaintiff, )
         )
vs. ) No. 99-1a27-CV-W-2
         )
THE UNITED STATES DEPARTMENT OF ) (Judge _____ )
THE ARMY, )
         )
        Defendant. )

## COMPLAINT

Plaintiff Olin Corporation ("Olin"), by its undersigned attorneys, for its Complaint states and alleges as follows.

### NATURE OF THIS ACTION

1. This is a bid protest action. Olin, as an interested party, challenges the decision of Defendant, the United States Department of the Army ("Army"), to award Alliant Techsystems ("Alliant") two contracts, and to fail to award those contracts to Olin. The combined price of the contracts is well in excess of one billion dollars.

2. The procurement at issue was conducted pursuant to two solicitations issued by the Army: request for proposals No. DAAA09-98-R-0121 ("RFP 0121"), and request for proposals No. DAAA09-99-R-0088 ("RFP 0088"). (Collectively, these are the "RFPs" or the "solicitations".)

3. Pursuant to RFP 0121 and RFP 0088, the Army sought to award contracts to (a) provide the Army with its requirements of small-caliber ammunition for a ten-year period;

and **(b)** operate the Lake City Army Ammunition Plant ("LCAAP"), located in Independence, Missouri, for the Army under a facilities use contract for a twenty-five year period.

4. Olin is the incumbent contractor, and has operated LCAAP for the Army since 1985.

5. Olin submitted timely and responsive proposals to the Army in response to **RFP** 0121 and **RFP** 0088. On information and belief, Olin's proposals offered the best overall value and the lowest risk to the Army, based on the evaluation factors set forth in the two **RFPs.** Thus, under the evaluation factors, the Army should have selected Olin's proposals for award.

6. Notwithstanding this fact, the Army awarded contracts pursuant to the **RFPs** to Alliant.

7.

## JURISDICTION AND VENUE

8. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1491(b). Venue is proper in this court pursuant to 28 U.S.C. $1391(e) because a substantial part of the events giving rise to this action occurred in this Court's jurisdiction.

## THE PARTIES

9. Plaintiff Olin is a corporation organized and existing under the laws of the state of Virginia.

10. The procurement was conducted by Defendant, acting through the United States Army, Industrial Operations Command ("IOC").

BACKGROUND

I.  INTRODUCTION

11. This case involves two related procurements conducted by the Army in connection with the Army's LCAAP.

12. The first procurement was conducted pursuant to RFP 0121. RFP 0121 originally was issued by the Army on September 29, 1998. Subsequently, the Army issued five amendments to RFP 0121.

13. RFP 0121, as amended, contemplated the award of a firm fixed price requirements contract for the production of certain types of small caliber ammunition. RFP 0121 contemplated that the Army would purchase all of its requirements for the ammunition identified therein for a ten-year period.

14. The second procurement was conducted pursuant to RFP 0088. RFP 0088 was issued by the Army on March 11, 1999. Subsequently, the Army issued one amendment to RFP 0088.

15. RFP 0088, as amended, contemplated the award of a facilities use contract to operate LCAAP for the Army.

16. The RFPs contemplated that both resulting contracts would be awarded to the same offeror and that the successful offeror could use LCAAP to manufacture small caliber ammunition for the Army.

II.  THE FEDERAL PROCUREMENT PROCESS

17. Federal procurements generally are conducted using one of two procedures: sealed bidding, or negotiated procurements. The Army conducted the LCCAP procurements as

negotiated procurements. The procedures governing negotiated procurements are set forth in part 15 of the Federal Acquisition Regulation ("FAR"), which is codified at 48 C.F.R. Ch. 1.

18. In negotiated procurements, an agency is required to specify the factors and significant subfactors that the agency will consider in evaluating proposals for award, and their relative importance. FAR § 15.203(a)(4), 48 C.F.R. Ch. 1. The agency may only evaluate proposals and select a contractor on the basis of the factors actually specified in the solicitation. FAR § 15.303(a)(4), 48 C.F.R. Ch. 1.

19. Negotiated procurements generally are conducted in several phases. In the first phase, the agency evaluates the initial proposals submitted by the offerors and establishes a competitive range. Generally, the competitive range is comprised of all of the most highly rated proposals, based on ratings of each proposal against the evaluation factors contained in the solicitation. FAR § 15.306(c)(l), 48 C.F.R. Ch. 1.

20. After the competitive range is established in a negotiated procurement, the agency engages in discussions with each offeror remaining in the competitive range. FAR § 15.306(d)(l), 48 C.F.R. Ch. 1. In such discussions, the agency is required to discuss with each offeror "significant weaknesses, deficiencies, and other aspects of its proposal (such as cost, price, technical approach, past performance, and terms and conditions) that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award." FAR § 15.306(d)(3), 48 C.F.R. Ch. 1.

21. In conducting discussions with offerors in the competitive range, an agency may not favor one offeror over another. FAR §15.306(e)(1), 48 C.F.R. Ch. 1.

22. After completing discussions with the offerors in a negotiated procurement, an agency requires the offerors to submit revised offers, known as best and final offers ("BAFOs"). FAR § 15.307(b), 48 C.F.R. Ch. 1. The agency is required to evaluate the BAFOs in accordance with the evaluation factors set forth in the solicitation in order to select a contract.

23. There are two methods for selecting a contractor that may be used in a negotiated procurement. The solicitation must specify which method will be used, and the actual selection must be made in accordance with the method identified in the solicitation.

24. The first source selection methodology is the lowest price technically acceptable source selection process. In this process, all offeror's whose proposals meet the technical requirements are treated as technically equal, and the contract is awarded to the offeror who offers the lowest price. FAR §15.101-2, 48 C.F.R. Ch. 1.

25. The second method of source selection is the best value tradeoff method. In this method, proposals are not merely evaluated as meeting or failing to meet the non-price requirements. Rather, proposals are given relative ratings for one or more non-price evaluation factors. The agency then conducts an analysis to tradeoff the non-price ratings with the evaluated price of each proposal, to ascertain which proposal offers the best value to the government. FAR §15.101-1, 48 C.F.R. Ch. 1.

III. THE LCAAP PROCUREMENTS

    A. The Solicitations

26. The LCAAP procurements conducted pursuant to RFP 0121 and RFP 0088 were negotiated procurements.

27. RFP 0121 and RFP 0088 contained the identical evaluation factors. Specifically, the solicitations stated that proposals would be evaluated on the basis of Past Performance, Technical Capability, and Cost. Further, the solicitations stated that each of these factors was of equal weight. The solicitations also provided that proposals received in response to the two solicitations by each offeror would be evaluated in conjunction with each other.

28. In addition, RFP 0121 and RFP 0088 required that proposals also be separately evaluated through a risk assessment that would document the relative strengths, deficiencies, significant weaknesses, and risks of each proposal. Each proposal was to receive an overall risk rating. The potential ratings ranged from "low" (meaning, under the terms of the evaluation criteria that "virtually no doubt exists that the offeror will successfully perform the required effort") to high ("significant doubt exists that the offeror will successfully perform the required effort").

29. Thus, the solicitations provided that the Army would use the best value tradeoff source selection methodology, and not the lowest price technically acceptable methodology. The solicitations provided that both contracts would be awarded to the same offeror.

B. **Receipt And Evaluation Of Proposals**

30. Four companies submitted initial proposals in response to both RFP 0121 and RFP 0088. The Army found that all four companies were in the competitive range, and thus were eligible for further discussions and potential award. One of the four companies later withdrew from the procurement, and thus only three offerors continued to participate.

31. After an initial round of discussions, on or about May 19, 1999 the Army requested that offerors submit BAFOs. Olin complied with the Army's request, and submitted a BAFO on June 1, 1999.

32. On or about June 8, 1999, however, the Army reopened the procurements, issuing an amendment to RFP 0121. Along with the amendment, the Army engaged in written discussions with each offeror. The Army provided each offeror with a written document identifying questions or areas for the offeror to clarify or correct its proposal.

33. On information and belief, the sole reason that the Army reopened the procurement was because Alliant's proposal required correction. On information and belief, without the required correction to its proposal, Alliant would not have been eligible for award.

34. Olin submitted the requested BAFO on or about June 10, 1999.

35. After awarding the contracts to Alliant, the Army provided Olin with a debriefing. At the debriefing, the Army advised Olin that, after the Army received BAFOs, the Army had further communications with Alliant. Specifically, the Army sent Alliant a letter requesting that Alliant confirm the accuracy of its price. On information and belief, Alliant did not provide a sufficient response. Consequently, the Army sent still another letter to Alliant asking Alliant to respond to specific questions regarding the accuracy of Alliant's price. Finally, Alliant provided the response the Army desired.

36. On information and belief, if Alliant had not responded adequately to the Army's post-BAFO communications, Alliant would not have been eligible for award.

37. On information and belief, the Army did not engage in any post-BAFO communications with any offeror other than Alliant.

38. The Army evaluated Olin's **BAFO** as ranking first among the four offerors for the Technical Capability and for the Past Performance factors, which constituted two-thirds of the evaluation scheme. In comparison, Alliant's **BAFO** was ranked third (i.e., last) for these two factors. These rankings were somewhat misleading, however, as the Army assigned the same adjectival rating of Excellent to the technical proposals of all four offerors. In addition, on information and belief, the Army had informed the offerors during proposal negotiations that each likely would receive a technical rating of Excellent during negotiations.

39. The Army evaluated Alliant's **BAFO** as offering the lowest cost to the government. The Army evaluated Olin's **BAFO** as offering the second lowest cost to the **government.** Alliant's evaluated **BAFO** cost was significantly lower than Olin's evaluated **BAFO** cost.

40. Based on the evaluation of the **BAFOs** under the three evaluation factors (Technical Capability, Past Performance, and Cost), the Army assigned Olin's proposal a low risk. Under the definitions included in both **RFP** 0121 and RFP 0088, this meant that the Army believed there was **virtually** no doubt that Olin would perform the contract successfully.

41. Based on the evaluation of the **BAFOs** under the three evaluation factors (Technical Capability, Past Performance, and Cost), the Army evaluated Alliant's **BAFO** as having a moderate risk. Under the definitions included in both **RFP** 0121 and **RFP** 0088, this meant that the Army had some doubt that Alliant would successfully perform the contract.

42. The Army's source selection authority ("SSA") selected Alliant for award based solely on Alliant's extremely low price, and disregarded the remaining evaluation criteria, including the results of the risk assessment.

## COUNT I
### (<u>Arbitrary And Capricious</u><br><u>Source Selection Decision And Deviation</u><br><u>From The Specified Evaluation Scheme</u>)

43. Paragraphs 1-42 are incorporated herein by reference.

44. The Army's source selection decision was arbitrary and capricious, and not in accordance with the evaluation factors set forth in the RFPs.

45. Olin's proposals were ranked first for the Technical Capability factor and the Past Performance factor, and second for the Cost factor. In terms of the relative importance of these factors, therefore, Olin ranked first for two-thirds of the weighted evaluation factors, and second for the remaining one-third of the weighted evaluation factors.

46. In contrast, Alliant's proposals were ranked third (i.e., last) for the Technical Capability and Past Performance factors, and first for the Cost factor.

47. On information and belief, the SSA selected Alliant for award solely on the basis of Alliant's low evaluated cost. In so doing, the SSA made cost the most important evaluation factor. Even though Olin was ranked higher for factors weighted twice as much as cost, the SSA still awarded the contract to Alliant. By failing to award the contract to Olin, which was ranked first for two-thirds of the evaluation factors, the SSA ignored the relative rankings of the evaluation factors and made a selection decision that was inconsistent with the scheme set forth in the solicitations.

48. On information and belief, moreover, the Army had substantial doubts that Alliant would be able to perform the contracts at its evaluated price. Thus, there was doubt as to

whether Alliant's proposal represented the lowest cost approach, or the extent to which Alliant's approach would result in actual cost savings.

49. Despite the Army's concerns with the risk associated with Alliant's low proposed and evaluated cost, the SSA essentially accepted Alliant's low evaluated cost as the likely cost that the government would incur if Alliant were awarded the contract. This was arbitrary and capricious, and ignored the Army's own findings and concerns with Alliant's cost proposal.

50. Moreover, the SSA awarded the contract to Alliant solely on the basis of Alliant's low evaluated cost. Because the SSA ignored the Army's identified concerns with Alliant's low cost, the SSA's stated basis for selection was arbitrary and capricious.

5 1. Finally, in awarding the contracts to Alliant, the SSA completely failed to consider the risk assessment ratings as required by the evaluation scheme contained in the RFPs.

52. Accordingly, the selection of Alliant for award was arbitrary and capricious, and inconsistent with the evaluation factors set forth in the solicitations, in violation of FAR § 15.303(a)(4), 48 C.F.R. Ch. 1.

## COUNT II
### (Deviation From The Evaluation Factors)

53. Paragraphs l-52 are incorporated herein by reference.

54. In evaluating proposals and selecting Alliant for award, the Army deviated from the evaluation factors set forth in RFP 0121 and RFP 0088.

55. Specifically, the Army converted the source selection methodology for the LCAAP procurements from best value tradeoff to lowest cost technically acceptable. The Army did this by engaging in multiple rounds of discussions for the purpose of ensuring that all offeror's

technical proposals would be evaluated as essentially equal. As a result, price became the sole basis for award, and the Army never conducted an appropriate tradeoff between price and non-price factors. In fact, the SSA completely disregarded the risk assessment ratings given to each proposal as required by the evaluation scheme contained in the RFPs.

56. Accordingly, the Army failed to select a contractor in accordance with the factors set forth in the RFPs, in violation of FAR §15.303(a)(4), 48 C.F.R. Ch. 1.

## COUNT III
### (Unequal Treatment)

57. Paragraphs 1-56 are incorporated herein by reference.

58. The Army improperly favored Alliant in conducting these procurements.

59. On information and belief, the Army concluded that Alliant's initial proposal contained unbalanced pricing. This meant that, although Alliant's overall evaluated cost was low, the Army did not believe that Alliant's cost would be low in actual performance.

60. When the Army issued Amendment 0004 to RFP 0121, the amendment specifically cautioned offerors against submitting unbalanced pricing. On information and belief, this caution was intended to advise Alliant to revise its pricing scheme.

61. After issuing Amendment 0004 to RFP 0121, the Army requested offerors to submit BAFOs. On information and belief, the BAFO submitted by Alliant continued to reflect pricing inadequacies. On information and belief, the Army reopened the procurement, issuing Amendment 005 to RFP 0121 and requesting a second round of BAFOs, solely to give Alliant another chance to remedy its price proposal.

62. Even after receipt of the **"final BAFO"** from Alliant, the Army still had concerns about Alliant's extremely low prices. Consequently, as the Army advised Olin during the **post-**award debriefing, the Army twice sent letters to Alliant asking questions regarding the accuracy of Alliant's price. After finally getting the response it desired, the Army ended its post-BAFO discussions with Alliant.

63. Throughout this process, the Army's conduct improperly favored Alliant. The Army apparently was very concerned that Alliant's extremely aggressive pricing would not prove to be low in actual performance. Yet, on information and belief, the Army was so enamored with Alliant's low price that the Army did everything it could to help Alliant correct its proposal so that the Army could accept Alliant's proposal. At several points in this procurement, the Army could have rejected Alliant's proposal because of the concerns with Alliant's price proposal. Instead, the Army coached Alliant to make corrections and improvements, through multiple rounds of discussions and post-BAFO negotiations.

64. The Army's conduct improperly favored Alliant, and was in violation of FAR § 15.306(e)(l), 48 C.F.R. Ch. 1. Further, the Army's post-BAFO discussions with Alliant violated the requirement that discussions be held with each offeror in the competitive range, FAR § 15.306(d)(l), 48 C.F.R. Ch. 1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Olin prays that judgment be entered in its favor and against Defendant as follows:

a. Permanently enjoining the Army from awarding the contracts to Alliant pursuant to RFP 0121 and RFP 0088;

b. Declaring that the Army abused its discretion and acted arbitrarily, capriciously, and irrationally in awarding the contracts to **Alliant** pursuant to RFP 012 1 and RFP 0088;

c. Directing the Army to make contract award to Olin pursuant to RFP 0121 and RFP 0088, as the offeror who offered the best overall value to the Army; and

d. Granting such other and further relief as the Court may deem just and proper.

**HUSCH & EPPENBERGER,** LLC

By: _____
Joel K. Goldman, #40453
Alan Popkin, #19229
1200 Main Street, Suite 1700
Kansas City, MO 64105
**Office:** (816) **421-4800**
**Fax No:** (816) 421-0596

Attorneys for Plaintiff